MHN

**RECEIVED**

JAN 3 1 2008
JAN 31 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

ALLEN BENNETT, A-81422,

Petitioner,

2 of 2
Petitions

-vs-

Case No. _____

WARDEN DONALD A. HULICK
and DIRECTOR ROGER E. WALKER
JR.

Respondents.

08CV689
JUDGE LINDBERG
MAGISTRATE JUDGE DENLOW

PETITION FOR WRIT OF HABEAS CORPUS
(State Prisoner)

NOW COMES the Petitioner, Allen Bennett, (pro se) respectfully moves this Honorable Court for relief against the respondents for violations of his due process rights for decisions that affects the length of his commitment to custody ~~custody~~ within the Illinois Department of Corrections relating to disciplinary proceedings for failure to provide him with an adequate notice or record written including a basis for disregarding exonerating evidence presented by him; arbitrarily subjecting him to disciplinary sanctions that was not supported by "some evidence" in the written record; failure to state the disposition of the charges the disciplinary action recommended and the reasons for recommending the disciplinary actions; and failure to review all the Adjustment Committee's disposition recommending that he lose goodtime credit, 730 ILCS 5/3-5-1 et seq. 20 Ill. Adm. Code 504.80 et seq.

-1-

## STANDING FOR HABEAS CORPUS

Section 2254 requires that the Petitioner be in "custody". 28 U.S.C. 2254(a). See Malong v. Cook, 490 U.S. 488, 490-91, 109 S.Ct. 1923, 104 L.Ed.2d. 540 (1989) (per curiam). In Peruer v. Rodriguez, 411 U.S. at 487-89, 93 S.Ct 1827, the Supreme Court established that actions for the restoration of good time credit falls within the "core" of habeas corpus because they go directly to the constitutionality of the prisoner confinement itself and seek either immediate release or a standard shortened length of confinement. See also Walker v. O'Brien, 216 F.3d. 626, 633, (7th Cir. 2000) (adhering to circuit precedent that section 2254 is the correct vehicle for contesting loss of good time credit in prison disciplinary proceedings.)

Prisoners has a right under the constitution reciect procedural Due process created by the state or the Due Process Clause itself to be protected from arbitrary actions by government interference with certain fundamental rights and liberty interest. Sandin v. Conner, 515 U.S. 472, 115 S.Ct, 2293, 132 L.Ed.2d. 418 (1995) and Wolf v. McDonell, 418 U.S. 539, 555-57, 94 S.Ct. 2963, 41 L.Ed 2d. 935 (1974) State laws could also create protected liberty interest. Board of Regents v. Roth, 408 U.S. 564, 676-77, 92 S.Ct. 2701, 33 L.Ed.2d. 548 (1972) In Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct 2258, 138 L.Ed.2d. 772, (1997) the Supreme Court has decided that the "Due process guarantees more than fair process and "liberty" it protects including more than absence of physical restraint" and " provides heightened protection against government interference with certain fundamental rights and liberty interests".

Petitioner states that the respondents failed to afford him due process of law because both the investigative and disciplinary reports both prima facie failed to provide him with adequate

notice because the chargeable offenses are totally investigative without the Petitioner ever being fully advised of his rights by the investigator or the reporting employee of these reports. (See Exhibits B and E) Because the respondents has failed to advised Petitioner of his rights prior to his interview and investigation of the resulting charges, he was subject to these chargeable offenses based solely on his interview without being fully advised of his rights ~ resulting in a ~~total~~ denial of his due process of law, ~~relating to a~~ loss of his good time credit.

## FACTUAL ALLEGATIONS

1.) Petitioner Allen Bennett is a state prisoner serving a single charge for a non-violate offense in the Illinois Department of Corrections (IDOC). He is sentence to 15 years term custody. (See attached Exhibit A)

2.) Petitioner who is an African-American inmate was at the Pinckneyville Correctional Center ("Pinckneyville Corr. Ctr") at all times revelant to this action. (See Exhibit A 2 of 2)

3.) While at the Pinckneyville Corr. Ctr. Petitioner filed grievances using the inmate grievance procedures because there was wide-spread of a monopoly of ~~all~~ certain job assignments and programs denied to individuals of his race and other individual of color that was given to only caucasian inmates.

4.) As a result, on 12-21-06, Petitioner was placed on the College Unit with a cellmate name "Lofton". Mr. Lofton was known to be aggressive towards his cellmate by all inmates and staff. And placing him in the cell with Petitioner was a guarantee conflict that would result in disciplinary actions.

5.) However, Petitioner made many requests to staff to remove Lofton from the cell or himself because Lofton was instigating a physical confrontation with him.

6.) Surprisingly and ~~entire~~ under lockdown status of the entire prison at the time, staff decided to transfer Lofton to another cell. The following next day, inmate Agin was placed in the cell with Petitioner. Agin is a Caucasion inmate by race.

7.) On 1-23-07, Petitioner filed a grievance using the inmate grievance procedure because inmate Agin and him had a worser relationship than him and Lofton. (See Exhibit C 1 of 3)

8.) Specially, inmate Agin was openly using excuses to want to engage in a physical altercation with Petitioner [1] And Petitioner did not want any trouble.

9.) On 1-25-07, Petitioner recieved a response to his grievance denying him relief. (See Exhibit C 1 of 3)

10.) On that same night about 9:30 pm, inmate Agin took his medication which was distribute to him by the nursing staff in the cell.

11.) Afterwards, inmate Agin told Petitioner that he needs the lights off because he has just took his medication and wanted to go to sleep.

12.) Petitioner at the time was researching some legal matters and needed the light at the time to read his books on the matter.

13.) After a lengthy discussion about the lights being on, Petitioner gave in and decided to cut the lights off.

14.) As soon as Petitioner turned off the lights, Agin jump off his top bunk and begin to punch Petitioner with a sharp instrument in his hand.

[1] Inmate Agin was a highly violate individual who is incarcerated into the IDoc for Aggravated Battery on the Chief of Police and his officers in down state Illinois.

-4-

15.) As a result, Petitioner briefly retaliated and as a result both parties received injuries.

16.) Petitioner then activated the emergency button in the cell for staff. No one responsed.

17.) At that time, Agin begin to panic indicating that he could get a lot of time in segregation and a case for stabbing Petitioner.

18.) Petitioner at that time felt sorry for Agin and decided not to speak to officials.

19.) The following day, Petitioner told Agin that his injuries is pretty bad and that he might need to see a Doctor. Again, Agin begin to panic and Petitioner allowed the matter to pass.

20.) However, on 1-28-07, Petitioner was determine to do something about his injuries. So he told Agin that when the come to bring his medication, it was time to do so.

21.) That morning both Petitioner and Agin expressed our injuries and indicated that we were fighting.

22.) Security staff took Agin out of the cell first to go to the Healthcare Unit Petitioner was taken afterwards.

23.) While at the Health Care Unit, Petitioner never received any treatment by the healthcare staff. He was being interviewed at that location by Internal Affairs despite the fact that he was complaining mostly about his injuries.

24.) Internal Affairs never advised Petitioner of his right, at that interview, Nor was he ever advised of his rights at any other subsequent interview,

- 5 -

25.) After a short interview by Internal Affairs, Petitioner was ordered to leave and be escorted to segregation. He asked about his injuries and attention by medical staff, but was told by these officials that he needs to put in a sick call slip.

26.) Petitioner was then taken to the Receiving Unit Segregation where him and his cellmate were strip searched and property searched enrouted to Unit R-S which is a segregation building more than a 100 feet outside.

27.) After the searched, Petitioner was ordered to carry his personal property and Agin (cellmate) to R-S in the cold weather with only a thin jump suit on, shorts and summer wear issued shoes with a hole in the souls. It should be noted that at all relevant times of this action, Petitioner was a 47 years of age 6'3, 220 lbs while Agin was probably 5"11 at 200 lbs more bulky and at the age of 30 or so years old)

28.) While in segregation, Petitioner was formally placed under investigation for 301-Fighting and 630 -Investigative Status. No indication on this report was given as to whether Petitioner was ever advised of his constitutional rights. (See Attached Exhibit B)

29.) Petitioner was after many attempts arbitrarily denied medical attention where his injuries had worsen.

30.) In arbitrarily denying Petitioner medical treatment, the respondents attempted to undermine him by submitting memorandum of his complaints to him by individual DON (Dean of Nurses) that were not actual employed at that facility. (See Exhibit D)

31.) As a result, on 2-17-07, a disciplinary report was written by S. Sroka charging Petitioner with 102 - Assaulting

Ony Person, 110-Impeding or interfering with on investigation, and 303 - Giving False Information to an Employee. (See attached Exhibit E) No indication on this report was given as to whether Petitioner was advised of his Constitutional rights as a result of this alleged ~~interview~~ interview and investigation.

32.) Petitioner was later seen by the Adjustment Committee who found him guilty and recommended 6 months segregation, C-grade status, and good time ~~revocation~~ revocation [2]

33.) Petitioner states that both the investigative and disciplinary reports clearly failed to provide him ~~~~ adequate notice because the chargeable offenses are totally an investigation without the Petitioner even being fully advised of his rights by the investigator or the reporting employee. (See Exhibit ~~~~B and E)

34.) Petitioner states that under these circumstance, the respondents violated his rights under the due process clause which protects him against being charged with these offenses without being fully advised of his rights of these charges because these chargeable offense are obviously stemming from alleged statement purportly given ~~~~ to institute the charges without being advised of his constitutional rights.

35.) Petitioner also states that his due process rights were further violated by the respondents because they fail to include a basis for disregarding exonerating evidence presented by him nor took notice of the written report which highly suspected as written detailing the resulting investigation and conclusion that the fight was caused due to a conflict between both inmates regarding the lighting in the cell. The report clearly indicates that inmate Bennett

[2] The good time revocation was reduced to 2 months by the Director.

suggested that the lighting be turned off while inmate Agin suggested that it be kept on. It is hardly likely that inmate Agin would want the lighting on in the cell since he just recieved medication that makes him sleepy. (Exhibit E). The Adjustment Committee should had noted this matter along with Petitioner grievance as exculpatory ~~this~~ evidence of a fraudulent investigation.

36.) In addition, the respondents clearly failed to state the actual disposition of the charges the disciplinary actions recommended and the reasons for recommending the disciplinary action', and failed to review all the Adjustment Committees disposition recommending that he lose good time cred.t pursuant to 730 ILCS §13-8-1 et seq, 20 Ill. Adm. Code 504.80 et seq.

37.) Petitioner states that his procedural due process rights were denied because these disposition of the charges failed in the beginning to operate the disciplinary actions recommended and any reasons for the recommending disciplinary actions due to the respondents failure to actually ~~advise~~ fully advised him of his rights inwhich the charges ~~derive~~ derive from an investigation based solely on an interview without cautionary warnings of basic rights.

## RELIEF

Wherefore, Petitioner respectfully requests that the Disciplinary Report dated ~~2/12~~ 2-17-07 be expunged and all rights and good time cred.t be resented and any other additional relief this Court deems to be just and proper.

Respectfully submitted

Allen Bennett - Petitioner

## DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: 1-24-08

/s/ _Allen Bennett_
NAME: Allen Bennett
IDOC#: A-81422
Menard Correctional Center
P.O. BOX 711
Menard, IL 62259

# AFFIDAVIT OF SERVICE

I, _Allen Bennett_____, state that I served a copy of the document to which this affidavit is attached upon each party, or, if represented by counsel, upon the attorney of record for said party (ies) by enclosing the same in a sealed envelope plainly addressed as is disclosed by the pleadings of record herein and by depositing each of such envelopes in the box designated for United States mail at ~~Pontiac~~ Menard Correctional Center, ~~Pontiac~~ Menard Illinois, together with the appropriate request to the prison official responsible to affix fully prepaid thereon, on this _~~2nd~~ 30th_ day of _~~April~~ January_____, 20_08_.

_____
Signature

# VERIFICATION

I, _Allen Bennett_____, the undersigned, certify and state that:

1. I am the (Petitioner/Respondent) in the above captioned legal matter.

2. I have read the foregoing application and have knowledge of its contents; and

3. **Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth in the foregoing motion and this affidavit are true and correct except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.**

_____
(Your signature)

Exhibit A

## IN THE CIRCUIT COURT OF COOK COUNTY

E OF THE STATE OF ILLINOIS  )     CASE NUMBER      00CR1581601
           V.                )     DATE OF BIRTH    12/12/59
        BENNETT              )     DATE OF ARREST   06/13/00
                              IR NUMBER 0474723    SID NUMBER 018389580

### ORDER OF COMMITMENT AND SENTENCE TO
### ILLINOIS DEPARTMENT OF CORRECTIONS
==================================

e above named defendant having been adjudged guilty of the offense(s) enumerated belo
y sentenced to the Illinois Department of Corrections as follows:

| Statutory Citation | Offense | Sentence | Cla |
|---|---|---|---|
| 5-5/4-103.2(A)(3) | POSS STOLEN VEHICLE > $25,000 | YRS. 015  MOS.00 | 1 |

nd said sentence shall run concurrent with count(s) ___ ___ ___ ___

_____   _____   YRS. ___ MOS. ___

said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

_____   _____   YRS. ___ MOS. ___

said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

_____   _____   YRS. ___ MOS. ___

said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

_____   _____   YRS. ___ MOS. ___

said sentence shall run (concurrent with) (consecutive to) the sentence imposed on:

nt ___ defendant having been convicted of a class ___ offense is sentenced as
ffender pursuant TO 730 ILCS 5/5-5-3(C)(8).

unt ___ defendant is sentenced to an extended term pursuant to 730 ILCS 5/5-8-2.

urt finds that the defendant is entitled to receive credit for time actually serv
or a total credit of 854_ days as of the date of this order

FURTHER ORDERED that the above sentence(s) be concurrent with
imposed in case number(s) _____
ive to the sentence imposed under case number(s)

_____   _____   _____   _____

URTHER ORDERED THAT _____

_____

_____

ORDERED that the clerk provide the Sheriff of Cook County with a copy of this Order and that the Sheriff
into custody and deliver him                        of Corrections and that the Department take
y and confine him/her in a m                        above sentence is fulfilled.

**ENTERED**

OCTOBER 15, 2002          TIME_____ AM/PM

OCT 15 2002      ENTER: 10/15/02

```
OMOHP009           ILLINOIS DEPARTMENT OF CORRECTIONS -- OTS          8/ 8/ 7
PAGE: 0002         HOUSING -- INMATE OCCUPANCY HISTORY INQUIRY         09:14:40

IDOC #: A81422 BENNETT, ALLEN              BEG DTE:  1  1 07    END DTE:  8  8 07
NON-SMOKING REQ: NO
                                                        NON
------FROM--------     ---TO---      -LIVING UNIT-     SMOKE      REASON FOR MOVE
5 26 07  12:34:44      5 28 07       PNK R5 A   55       Y        ROUTINE
2 17 07  09:18:06      5 26 07       PNK R5 A   15       Y        ROUTINE
2 16 07  14:27:48      2 17 07       PNK H  01 03        Y        ROUTINE
2 16 07  14:13:10      2 16 07       PNK OU OU OU        Y        FURLOUGH
2 15 07  20:55:48      2 16 07       PNK H  01 03        Y        MEDICAL REASON
2 15 07  11:16:03      2 15 07       PNK H  01 01        N        ROUTINE
1 28 07  12:11:26      2 15 07       PNK R5 A   15       Y        ROUTINE
12 21 06  08:43:48     1 28 07       PNK R3 A   74       N        ROUTINE


NEXT KEY DATA: IDOC #: A81422  DTE BEG:  1  1  07    DTE END:  8  8  07
PF7: PAGE BACK      PF8: PAGE FWD
INQUIRY COMPLETE                     PLEASE ENTER NEXT KEY DATA
```

Exhibit  A

2 of 2

ILLINOIS DEPARTMENT OF CORRECTIONS
**Offender Disciplinary Report**

Exhibit No. B
1 of 2



### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

_____    _____
Offender's Signature                                    ID#

☐ Check if offender refused to sign

### Serving Employee

_____    _____    _____
Print Name                                          Badge #                          Signature

☒ a.m.
☐ p.m.

_____    _____
Date Served                             Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____    _____
Offender's Signature                                    ID#





**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Disciplinary Report**

PINCKNEYVILLE C. C.
Facility

Date: 01-28-07

**Offender Information:**

Offender Name:  BENNETT, ALLEN                                    ID #:  A81422

**Offense Information:**

Observation Date:  01-28-07                    Approximate Time:  10:00            ☒ a.m.
                                                                                   ☐ p.m.
Location:  INTERNAL AFFAIRS

**Offense(s): DR 504:**  #630 INVESTIGATIVE STATUS
                         #301 Fighting

**Summary of facts supporting violation:** (NOTE: Each offense identified above must be substantiated.)

Inmate BENNETT, A81422, has been moved to the Segregation Unit and placed on Investigative Status, for the safety and
security of the institution for his possible involvement in a fight

**Witness(es):**

| Witness Name | Witness ID | Witness Type (Staff/Offender/Visitor) |
| --- | --- | --- |
| | | |
| | | |
| | | |

☐ Check if DOC 0318 is attached to describe additional facts, observations or witnesses.

*Do not write below this line.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Distribution:   Master File
                Offender
                Facility (2)

DOC 0317 (Eff. 8/2006)
(Replaces DC 7205)

## COMMITTED PERSON'S GRIEVANCE

Date: 1-23-07

Committed Person (Please Print): Allen Bennett

ID# A81440

Present Facility: Pinckneyville Correctional Center

Facility where grievance issue occurred: Pinckneyville Corr. Ctr.

### NATURE OF GRIEVANCE:

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [x] Other (specify)

RECEIVED

FEB - 2 2007

- [ ] Disciplinary Report: ____/____/____
  Date of Report       Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Several days ago, I received a cellie from R-4. From the very first day he arrived, he indicated to me that he takes medication for his Mental Health. After closely observing my cellie's behavior, I also learned that without his medication and other stimulus such as cigarettes and coffee, he becomes like a person suffering from Cognitive Dysfunction. Now, this guy is out of cigarettes and coffee and because of it his behavior has gotten rude all of the sudden and then he'll claim down. Now I just recently had a cellie prior before my present cellie, that is also described as a "Bug." And there was also suspicion or every reason to be suspicion that this previous cellie of mine has a Confidential [strikethrough] Informant, therefore after

Relief Requested: I respectfully request to be placed on another unit and an investigation be conduct as to why individuals are transferred to my cell such as known to not have good relationship with cellies and to that that

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Allen Bennett
Committed Person's Signature

A81440
ID#

1/23/07
Date

(Continue on reverse side if necessary)

### Counselor's Response (if applicable)

Date Received: 1/25/07

[x] Send directly to Grievance Officer
[ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: Cell assignments are via the placement office and per Administration. Inmates cannot choose a cell mate. This unfortunately is a direct result of incarceration life.

Tracy L. Mane
Print Counselor's Name

Tracy L. Mane CCII
Counselor's Signature

1/25/07
Date of Response

### EMERGENCY REVIEW

Date Received: ____/____/____

is this determined to be of an emergency nature?

[ ] Yes: expedite emergency grievance
[ ] No: an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____
Chief Administrative Officer's Signature

_____
Date

Exhibit C 1063

he was transferred to another cell, he told me that I would have problems with my next cell mate. Now I have never had problems with none of my cell mates, since I've been in the IDOC (Oct 2002) These two recent cell mates are the only one, I had difficult times getting along with and both of them have Mental problems, There both a piece of work to the head. However, I can't help but to think as to whether these guys are planted here to start some problems for me. Because I can't see Jesus Christ having a positive relationship with any of them, not alone me. And I think most of the unit can back me up on this. It seems quite obvious that there an overzealous attempt to place me in a position for me to receive disciplinary actions. And I certainly can't and will not do. Nevertheless, this is 2 for 2 of the same type of individual, with Mental problems. The odds of that happening is unlikely.

This is a College unit and I am not in College and will not be going because the program in Food Service, I completed in 1994 with 10 extra credit hours towards the Degree. Thus the only thing I am interested in Rend Lake College is to complete the Food Service and received a Degree in the Vocational course which is not offered. So why am I on this unit?

Relief: because of their Mental Problems.

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report |
|---|

**Date Received:** 2-2-07    **Date of Review:** 2-9-07    **Grievance # (optional):** 2-9

**Committed Person:** Bennett, Allen    **ID#:** A81422

**Nature of Grievance:** Cell placement

**Facts Reviewed:** Grievant states his current cellie suffers from some type of mental disorder. Grievant claims his previous cellie also suffered from a mental disorder. Grievant believes staff placed both of these inmates in his cell to cause him problems. Grievant states he is currently housed on the college wing but is not enrolled in college.

Relief requested: moved to another wing; investigate why inmates with mental disorders are placed in his cell

Cell assignments are designated by the Placement Office.

OTS reflects that grievant is no longer housed in R3A74. He is currently in segregation (single celled).

**Recommendation:**
As grievant is no longer housed in R3A74, this issue should be considered moot.

_____ T. Kisro CCII _____        _____ I. Kisro CCII _____
Print Grievance Officer's Name                          Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 2-9-07    ☒ I concur    ☐ I do not concur    ☐ Remand

**Comments:** _____

_____

_____

_____ Ken Bartley acc _____        2, 9, 07
Chief Administrative Officer's Signature                          Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____ all Re _____        A81422        _____ / _____
Committed Person's Signature                          ID#                          Date

Exhibit C
2 of 3



**Illinois**
**Department of**
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

June 8, 2007

Allen Bennett
Register No. A81422
Pinckneyville Correctional Center

Dear Mr. Bennett:

This is in response to your grievance received on March 5, 2007, regarding Cell Assignment (Wants Different Cell or Cellie), which was alleged to have occurred at Pinckneyville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

This office has reviewed your written grievance dated January 23, 2007 regarding the above request.

The Grievance officer's report (2-9) and subsequent recommendation dated February 9, 2007 and approval by the Chief Administrative Officer on February 9, 2007 have been reviewed.

Based on available information and in accordance with Department Rule 504.850, this office has determined that the grievance is without merit; therefore, no action will be taken; as these are administrative decisions.

FOR THE BOARD: _____

Sherry Benton
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____

Roger E. Walker Jr.
Director

cc:   Warden Yolande Johnson, Pinckneyville Correctional Center
      Allen Bennett, Register No. A81422

Exhibit NO C
3 of 3



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Pinckneyville Correctional Center / 5835 State Route 154 / Pinckneyville, IL 62274-3410 / Telephone: (618) 357-9722 / TDD: (800) 526-0844

# MEMORANDUM

**DATE:**     February 16, 2007

**TO:**        **Offender Bennett, A81422**

**FROM:**     Sonny Barger, DON

**SUBJECT:**   Letter

This is in response to your letter dated 2-6-07 received in the health care unit 2-7-07
wherein you complain that you should receive a tetanus injection after a hand injury. You
also complain of dry skin and request vitamin D & E ointment.
Review of your medical chart shows you only had superficial abrasions of your hand. You
were evaluated on nurse sick call on 2-14-07 and provided with hydro-cortisone cream for
your skin.
If the problem with your skin persist advise the nurse on nurse sick call as the MD would
have to order additional skin medication and the nurse can refer you to the MD if indicated.
SB:kc

cc:    Medical File
       File

Exhibit D
1 of 5



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

Pinckneyville Correctional Center / 5835 State Route 154 / Pinckneyville, IL 62274-3410 / Telephone: (618) 357-9722 / TDD: (800) 526-0844

# MEMORANDUM

**DATE:**     February 5, 2007

**TO:**     Offender Bennett, A81422     5A15

**FROM:**     Diana Hanner, DON    *D. Hanner RN*

**SUBJECT:**    Grievance

If your injuries are still bothering you then you must submit for nurse sick call. A nurse will come and assess your wounds at that time. If you need anything else please feel free to contact me.
DH:kc

cc:    Counselor Hartman
       Medical File
       File

Exhibit No. D

2 of 25

1 of 2

3-116

Exhibit No 7    5415

**COMMITTED PERSON'S GRIEVANCE**    1 of 3

| Date: 3-17-07 | Committed Person: (Please Print) Allen Bennett | ID#: A81422 |
|---|---|---|

Present Facility: Pinckneyville Corr. Ctr.    Facility where grievance issue occurred: Pinckneyville Corr. Ctr.

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ Disability
☒ Staff Conduct  ☐ Dietary  ☒ Medical Treatment  ☒ Other (specify): Procedural Due
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator    Process violation - Racial Discrimination
Prohibitory Actions

☒ Disciplinary Report: 2 / 17 / 07    Pinckneyville Correctional Center
Date of Report    Facility where issued

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
Administrative Officer.

MAR 23 2007
GRIEVANCE OFFICE
PINKCC

Brief Summary of Grievance: On 2-17-07, I received a falsely written disciplinary report (DR)
by S. Croka as a result of a fraudulently untrue investigation of a 301-Fighting
to 102-Assaulting any person etc. etc. To begin with, the DR fraudulently states I
assaulted Inmate Agin on 1-26-07 at 10:00 pm as a dispute about the light being on.
It goes on to state that as a result, I allegedly beat(sic) Agin and that Agin
has been scared to report the injuries to staff because I allegedly told him that
if Dhs did I would "get my boys on him". First of all, I do not have a TiV
or radio - Agin does have a TiV. Therefore, I have no reason in the world to have
the light off to be in total darkness at 10:00 pm?! Secondly, no African-American
refer themself or anyone else as "boys" in no form of speech. That term "boys"

Relief Requested: I respectfully request that the Disciplinary Report be expunged and that
an investigation be conducted regarding the misconduct of Internal Affairs
officials and S. Croka for violation of my Civil Rights

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Allen Bennett
Committed Person's Signature    A81422    3 / 17 / 07
ID#    Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: 3 / 20 / 07    ☒ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Issue involves discipline. Send to Grievance Officer

M. Hartung CCII
Print Counselor's Name    Counselor's Signature    3 / 20 / 07
Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___    Is this determined to be of an emergency nature?    ☐ Yes: expedite emergency grievance
☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature    ___/___/___
Date

Exhibit D
3 of 8

COMMITTED PERSON'S GRIEVANCE (Continued)

is a self evident speech of a racist outside an African-American. So unless this was able to mean I am going to get some "white boy" to get him it would be not racially correct but highly illegal. As we go further into this fraudulent DR. It states that I was seen by the HCU who reported that I had no injuries. On 2-15-07 I went on a Medical Writ to Kenneth Hall Hospital. I was examined by Dr. Thomas and Nursing staff there. There were reported injuries to my back, hand and right leg and ankle, consistent with a stabbed victim that has been untreated. According to Dr. Thomas these injuries were impossible to be self-inflict and as a result of them being untreated, my injuries was seriously aggravated that there was serious swelling on my right leg and ankle; CReport was released enroute my crossed to my Atty who was asked to be called as a witness at my Adj. Com hearing timely. Com refused to call her.) In addition, DON Diane Hanner reviewed my injuries and in a letter dated 2-5-07 she indicate that if they are still bothering me, to submit a sick call slip (See Attached App A. On top of that on 1-25-07, Counselor Mars responded to a grievance I submitted on 01-23-07 regarding my problems with Aguis and the cell in which I requested to be moved because Aguis was acting up in the cell trying to provoke me to fight him (See App Attached Grievance # 2-9. App B). In support of that grievance, I am attaching a response from Sherry Benton dated 10-30-06 to refer me for a correctional transfer because I did not understand why I was on a College wing? (See Attached App C and B.) I was being set up as I stated in my grievance before the incident. And also, I am nearly 50 years old and Aguis is in his 30's. The cell is too congested for me to have an advantage over him being an size enemy.

On 3-1-07 at my adjustment committee hearing, the committee failed to call my timely requested witnesses or review my evidence. In addition, the Committee was not an impartial decision-making body based on this African-American. Rensake from the security staff made up as an Adjustment Committee because it promotes in this instance a racial sentiment rather than a constitutional one under the Procedural Due Process Clause. Also this committee has been historically in denying proper reviews including calling timely requested witnesses in previous adjudications with me. This time exculpatory evidence exist in my favor for proper review and at the time of my hearing and the Com. deliberately fail to call this or to review this evidence. Clearly exhibits that this Committee was an impartial decision-making body. In addition, the Committee decision was not an adequate written record, and arbitrarily failed to state the disposition of the charges and recommendation and reasons for the disposition pursuant to 20 Ill. Adm. Code §04.80(1)(2)(b) §04.80(1)(3)(a) and arbitrarily subjecting me to discipline that was not supported by "some evidence". 20 Ill. Adm. Code §27.80(1)(C). It should be noted that the DR was fraudulently written against me immediately after another DrW claimed I had my injuries (See attached Dr D - the next day)! (Memo by another Dr - Sonny Berger dated 2-16-07 - DR was dated 2-17-22) This DR has once this arbitrary against me for diversionary and racial reasons (Aguis-white - Me and Officer American) who to instigate this DR. No Jury Don't exist in...



## Grievance Officer's Report

Date Received: 3-23-07      Date of Review: 3-30-07      Grievance # (optional): 3-116

Committed Person: Bennett, Allen          ID#: A81422

Nature of Grievance: Disciplinary report; staff conduct

**Facts Reviewed:** Inmate is grieving a disciplinary report written by C/O S. Sroka on 2-17-07 charging him with 102 Assault, 110 Impeding or Interfering with an Investigation, and 303 Giving False Information to an Employee. Grievant claims Internal Affairs did not properly investigate this incident. Grievant disputes the statements on the Adjustment Committee Summary related to him having no injuries as a result of the incident. Grievant states he had previously submitted a grievance regarding his problem with his cellie Agin. Grievant stated the Committee failed to interview his requested witnesses or to review his evidence. Grievant claims the Committee was not an impartial decision making body as the 2 members present were both African American female security staff. Grievant claims the Committee failed to state the disposition of the charges, their recommendations, and reasons for the sanctions.

Relief requested: expunge IDR; investigate the misconduct of Internal Affairs for violating his civil rights

**Record of Proceedings:** The IDR was read to inmate. Inmate pled not guilty stating, "He stabbed me with a paper clip. I was defending myself. I didn't have no choice but to beat him." The Adjustment Committee found inmate guilty of 102, 110, and 303 basing their decision on the IDR written by C/O Sroka which states he conducted an inquiry which revealed that inmate Bennett A81422 assaulted inmate Agin B20155 inside cell R3 A74 on 1/26/07. After the assault took place, Bennett attempted to mislead investigation alleging he had been stabbed and had injuries. On 1/28/07, inmate Agin B20155 was observed by staff having a laceration above his left eye to which Agin reported his cellie Bennett had assaulted him. At which time, Agin was assessed in Health Care Unit where he was treated for laceration above his eye, swelling along right side of face, abrasion under his nose having blood in his nostrils, scratches on his neck and arm. During an interview with Internal Affairs, Agin stated that Friday evening Bennett was upset about the cell light being on and proceeded to hit Agin. Bennett grabbed Agin and began hitting him numerous times, stopping Agin from alerting staff. Bennett told Agin if he (Agin) told staff, he (Bennett) would beat him again or Bennett would "have his boys get him." During an interview with Internal Affairs, Bennett stated that he and Agin had fought inside the cell. Bennett stated Agin punched him (Bennett) in the eye when the cell light was turned out. Bennett continued to state he (Bennett) punched Agin back when Agin began choking him (Bennett) until Bennett hit him (Agin) four or five more times. Bennett was taken to Health Care Unit where it was documented Bennett had no injuries to any part of his body except abrasions on his right hand knuckles. Bennett was placed in segregation on investigative status when he alleged Agin had stabbed him and that he needed medical treatment. A second interview was then conducted with Bennett who now stated that he and Agin had fought when Agin had stabbed him (Bennett) with a paperclip. Bennett continued to state that after

**Recommendation:**
Investigations are conducted as directed by Administration. I find the ticket to have been written and processed in accordance with DR504. After a total review of all information available, I find no violation of inmate's due process rights. The Adjustment Committee relied on sufficient evidence to be reasonably satisfied the inmate was guilty of the infraction. I recommend the grievance be denied.

**T. Kisro CCII**
Print Grievance Officers Name          _T. Kisro CCII_
                                          Grievance Officer's Signature

(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

## Chief Administrative Officer's Response

Date Received: _4-3-07_     ☑ I concur     ☐ I do not concur     ☐ Remand

Comments: _____

_____

_____

                     _Johnson CAC_                       _4,3,07_
                  Chief Administrative Officer's Signature                        Date

## Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_A. Bennett_                  _A-81422_                _4,9,07_
Committed Person's Signature                    ID#                         Date

Agin allegedly stabbed him, he (Bennett) "beat Agin". Bennett was again examined by Health Care Staff and found no evidence of puncture wounds. A Confidential Source was interviewed by Internal Affairs who stated he could hear Staff and found no evidence of it sounded like Bennett was punching Agin. Source continued to state the punching stopped when Bennett began bragging at how he had "beat Agin", but shortly thereafter Bennett was again heard hitting Agin several more times. The name of the Confidential Source is being withheld for his safety and the safety and security of the institution. Reporting employee contacted by Adjustment Committee who stated the disciplinary report is truthful and the Confidential Source is reliable due to similarities of his statement to that of inmate Agin. Inmate's own partial admission of guilt stating "I didn't have no choice but to beat him." Inmate identified by state ID card. The Committee recommended 6 months C grade, 6 months segregation, and 6 months GCC revocation. The CAO approved. NOTE: Bennett has past history of (104) Dangerous Contraband (6 in. metal slat 1 in. wide), and multiple incidents of (206) Intimidation or Threats.

Grievant's injuries related to the alleged assault from inmate Agin will not be addressed here as this issue was previously addressed. Please refer to grievance #2-35.

This Grievance Officer found no violation of DR504 regarding the Committee members hearing grievant's IDR. Per DR504, the CAO shall appoint the Adjustment Committee which shall be composed of at least two members, which, for adult offenders, shall include one person representing the program staff (to the extent possible) and at least one being a minority staff.

PNK Adjustment Committee Chairperson Lt. C. Jordan stated the Committee did not receive a request for witnesses from grievant in a timely manner. Per DR504.80, prior to the hearing, the offender may request that witnesses be interviewed. The request shall be in writing on the space provided in the disciplinary report and shall include an explanation of what the witnesses would state. If the offender fails to make the request in a timely manner before the hearing, the individual may be granted a continuance for good cause shown. The Committee may disapprove witness requests that are not received prior to the hearing.

Chairperson Lt. Jordan stated the Committee conducts fair and impartial hearings with strict adherence to DR504. Their recommendations to the warden are made after careful consideration of the facts reviewed.

Grievant's allegations that the Committee failed to stated the disposition of charges, their recommendation, and reasons for sanctions is not verified. This information is clearly included in the Adjustment Committee Summary. The Summary was sent to grievant on 3-14-07.

This Grievance Officer recommends denial of grievant's request for an investigation into this incident. An investigation has already been conducted. The investigation resulted in the disciplinary report being grieved here.



Exhibit No.
C
5 of 8

5-40

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

Exhib. 6

| Date: 5-6-07 | Offender: (Please Print) Allen Bennett | ID#: A-81402 |

| Present Facility: Pinckneyville Corr. Ctr. | Facility where grievance issue occurred: Pinckneyville Corr. Ctr. |

**NATURE OF GRIEVANCE**

- ☐ Personal Property
- ☑ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Disciplinary Report _____ Date of Report _____ Facility where Issued
- ☐ Restoration of Good Time
- ☑ Medical Treatment
- ☐ Disability
- ☐ HIPAA
- ☑ Other (specify): Denial of Medical Treatment Racial Discrimination and Denial of hygiene assistance

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   **Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   **Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   **Chief Administrative Officer**, only if EMERGENCY grievance.
   **Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Several days ago I was put in to see the Doctor by Nurse Boyd on the 7-3 shift. Today (5-6-07) the Docter was here in segregation. Many inmates on the unit was told and called on their call lines. One of them was called much later than the time I was put in to see the Docter. However, I was never called and I was told that I was not on the list. I have untreated injuries that has worsen for more than 3 months causing swelling to both my right leg and ankle. There is also marks that are blown as a result of the injuries. All in all, these untreated injuries are worsen by the day and I am

Relief Requested: I respectfully request to be seen by a Docter and an investigation be conducted into the practice of racial discrimination by staff here at the Pinckneyville Correctional by outside services

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature _____    ID# A-81402    Date 5/6/07

(Continue on reverse side if necessary)

---

**Counselor's Response (If applicable)**

Date Received: ___/___/___    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name _____    Counselor's Signature _____    Date of Response ___/___/___

---

**EMERGENCY REVIEW**

Date Received: 5, 8, 07    Is this determined to be of an emergency nature?  ☑ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____    Date 5, 9, 07

Exhibit C 6 of 8

constantly losing weight from 244 to 222 since I've been in segregation. Also I am in pain. It seems to me that I am seeing medical staff who are clearly turning their backs on my injuries and arbitrarily denying me medical treatment. My injuries are stab/ed wounds as a result of a fight. Because I am an African-American involved in a fight with a Caucasian, I received a racially discriminatory OR that presented itself with information that clearly suggest that credibility was given to the Caucasian inmate over an African-American inmate based on race (See OR dated 2-17-07) As a result, my injuries are being hidden by both medical staff and IA to support fraudulent Disciplinary defense I received based upon a racially discriminatory reason.

In addition, I am being denied hygene assistance when it is clear that I am indigent and is expected to be for my entire incarceration. I received no monthly supply of hygene assistance in the month of April, 2007 and I do not have dethpaste and soap to use. Hygene bags contains normally per month 2  0.25 or toothpaste and 2  4oz  oz bars of soap with other items

Relief and request that I receive my monthly supply of Hygene items for the month of April and May

ILLINOIS DEPARTMENT OF CORRECTIONS
### RESPONSE TO COMMITTED PERSON'S GRIEVANCE

*Exhibit* ☒

| Grievance Officer's Report | 3 |
|---|---|

**Date Received:** 5-10-07        **Date of Review:** 5-18-07        **Grievance # (optional):** 5-40

**Committed Person:** Bennett, Allen                                    **ID#:** A81422

**Nature of Grievance:** Medical, sanitation

**Facts Reviewed:** The CAO has determined this grievance to be of an emergency nature; therefore it is being processed as such.

Grievant states Nurse Boyd submitted him to see the doctor. Grievant states on 5-6-07, the doctor was in segregation seeing inmates. Grievant states he was not seen and was informed he was not on the list to be seen. Grievant claims to have injuries which have gone untreated for months. Grievant claims his right leg and ankle are swollen, and he is losing weight. Grievant claims his injuries were the result of an altercation between himself and a Caucasian inmate. Grievant claims he was stabbed by the other inmate, but his injuries are being hidden by medical staff and Internal Affairs. Grievant claims he was issued a fraudulent disciplinary report because he is African American. Grievant claims this is racial discrimination. Grievant claims his untreated injuries are worsening by the day. Grievant claims he is also being denied hygiene items even though he is indigent.

Relief requested: to be seen by a doctor; investigation by outside sources into the practice of racial discrimination; to be given a monthly supply of hygiene products

Grievant's allegations that he was issued a fabricated disciplinary report will not be addressed here as this issue was addressed in grievance #3-116.

Regarding grievant's allegations that he is being denied hygiene items, Clothing Room Supervisor P. Rensing stated that grievant is on the list to be issued an indigent hygiene bag once every 30 days. Grievant was issued an indigent hygiene bag on the following dates: 1-31-07, 2-21-07, 3-21-07, 4-21-07. Grievant is scheduled to receive a hygiene bag again on 5-21-07. The hygiene bag includes the following items: 2 large bars of soap, 2 small deodorants, 2 tubes of toothpaste, and 1 toothbrush. It has been PNK practice to issue indigent hygiene bag once every 30 days. PNK Administration has determined which items shall be included in the bags.

Records reflect that the incident grievant alleges resulted in his injuries occurred on or about 2-17-07. Per Director of Nurses N. Beaty, on 4-9-07, grievant was seen on nurse sick call. On 4-10-07, grievant was evaluated/treated by the physician's assistant for his right leg complaints. Grievant was instructed to follow up with nurse sick call as needed. On 4-21-07, grievant refused to be seen on nurse sick call after submitting a request for same. On 4-24-07, grievant was seen on nurse sick call and referred to the physician's assistant.

**Recommendation:**

I find that staff is following established procedures regarding issuance of hygiene items to indigent inmates. I find that grievant's medical concerns are being addressed by health care staff. I recommend denial of grievance.

**T. Kisro CCII**
_____                    _____
Print Grievance Officer's Name                    Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 5-18-7        ☒ I concur        ☐ I do not concur        ☐ Remand

**Comments:** _____

_____

_____

_____    Chief Administrative Officer's Signature        5-18-7
                                                                            Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____    A81422        5-22-07
Committed Person's Signature        ID#        Date

*Exhibit C*
*7 of 8*

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE** (Continued)

On 5-2-07, grievant was scheduled to see the physician's assistant but refused. On 5-3-07, grievant requested to be scheduled on the next physician's line citing complaints to the nurse that he does not like the physician's assistant. On 5-4-07, during nurse sick call, grievant asked the nurse to schedule him to see the physician rather than the physician's assistant. The complaints cited by the grievant on this nurse sick call visit were unrelated to the issue he grieves here. In order to expedite treatment, the nursing staff at PNK refers inmates to the next available provider on site. There are limited physician appointments available. The decision to schedule inmates to see the physician's assistant rather than the physician is based solely on the condition presented by the inmate. Scheduling of same is not practiced in a discriminatory fashion. On 5-13-07 at 12:30 p.m., grievant was evaluated by Dr. Larson. Dr. Larson found no right leg edema at the time of this evaluation. Dr. Larson instructed grievant to advise health care staff of his need for evaluation when the leg/ankle is swelling. Dr. Larson assessed the areas on grievant's back and documented his findings. Grievant will be scheduled for a follow up appointment approximately 4 weeks from this evaluation.



Exhibit No. C

8 of 8

Exhibit E
1 of 3

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender Disciplinary Report**



### Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

### Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

_____          _____
Offender's Signature                                        ID#

☐ Check if offender refused to sign

## Serving Employee

_____          _____          _____
Print Name                                         Badge #          Signature
                                                                            ☒ a.m.
                                                                            ☐ p.m.
                 _____          _____
                 Date Served                              Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____          _____
Offender's Signature                                        ID#

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Disciplinary Report**

<u>PINCKNEYVILLE C. C.</u>
Facility

Date: <u>02-17-07</u>



**Offender Information:**

Offender Name:   <u>BENNETT, ALLEN</u>       ID #:  <u>A81422</u>

**Offense Information:**

Observation Date:   <u>01-28-07</u>      Approximate Time:  <u>8:40</u>    ☒ a.m. ☐ p.m.

Location:  <u>R3-A-wing</u>

**Offense(s): DR 504:**  #102 Assaulting Any Person

                #110 Impeding or Interfering with an Investigation

                #303 Giving False Information to an Employee

**Summary of facts supporting violation:** (NOTE: Each offense identified above must be substantiated.)

Internal Affairs has conducted an investigation which has concluded that on 01-26-07, at approximately 10:00 p.m., inmate

BENNETT, A81422, assaulted inmate AGIN, SHANNON B20155, inside cell 3-A-74 and then attempted to mislead the

investigation by reporting nonexistant injuries and alleged to have been stabbed by AGIN. The investigation revealed that on 01-

28-07, at approximately 8:40 a.m., staff in R3 noticed a laceration above AGIN'S left eye and the area was swollen. AGIN was

removed from the cell and AGIN alleged that his cellmate, BENNETT, had assaulted him. AGIN was examined in the HCU with

noted injuries of the laceration above the left eye with swelling around the eye, swelling along the right side of the face, an

abrasion under the nose with blood in the nostrils, scratches on the neck, and scratches on the right arm. During an interview with

Internal Affairs, AGIN stated that on Friday, 01-26-07, after the evening med line, BENNETT was upset about the cell light being

on and hit him. AGIN stated that he attempted to alert staff but BENNETT grabbed him and started hitting him again. AGIN

stated that he did not know how many times he was hit. AGIN stated that one of the medications he takes is for a mental condition

and he gets "foggy" after taking it. <u>   (continued on next page)</u>

**Witness(es):**

| Witness Name | Witness ID | Witness Type (Staff/Offender/Visitor) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

☐ Check if DOC 0318 is attached to describe additional facts, observations or witnesses.

---

*Do not write below this line.*

------------------------------------------------------------

Distribution:  Master File
              Offender
              Facility (2)

DOC 0317 (Eff. 9/2006)
(Replaces DC 7205)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Disciplinary Continuation Page**

Pinckneyville CC
Facility

☒ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date:  01-28-07                    Incident # (if applicable):

Use the space below to provide any additional information.

AGIN stated that after BENNETT let him up, BENNETT told him that if he (AGIN) told staff, BENNETT would beat him again or BENNETT would "have his boys get him". AGIN stated that he remained in the cell and was too scared to report the assault.

During an interview with Internal Affairs, BENNETT stated that he and AGIN had been fighting in the cell. BENNETT stated that AGIN got angry when he (BENNETT) turned the light out and punched him in the eye. BENNETT stated that he hit AGIN back and AGIN then grabbed him in a choke hold. BENNETT stated that AGIN was very strong and was choking him and that he had to hit AGIN four (4) or five (5) more times to get AGIN to stop choking him.

BENNETT was examined in the HCU and no evident injuries were noted other than abrasions on the knuckles of his right hand. No redness, bruising, or swelling was visible on BENNETT'S face or neck.

After being placed in Segregation on Investigative Status, BENNETT alleged that he had been stabbed by AGIN and needed medical attention. BENNETT was interviewed again by Internal Affairs and during that interview he stated that on Thursday, 01-25-07, he and AGIN had a fight and that during the fight, AGIN stabbed him with what he thought was a paper clip. BENNETT stated that after AGIN stabbed him, he "beat AGIN". BENNETT stated that he remained in the cell with AGIN after being stabbed and did not have a chance to report it until now (01-28-07). Medical staff examined BENNETT and found no evidence of puncture wounds as alleged by BENNETT.

During the investigation, information was recieved from a Confidential Source (CS) that had reported reliable information previously. The identity of the CS is being withheld for the safety and security of the institution as well as the CS. The CS stated that he could hear BENNETT hollering at AGIN and that it sounded like BENNET was punching AGIN. The CS stated that the punching stopped for a while and that BENNETT then bragged at how he had "beat AGIN". The CS stated after a short period, he could hear BENNETT hit AGIN several more times.

The incident occurred inside the cell and was not visible to anyone else, however; Internal Affairs concluded that AGIN was assaulted based on his injuries and that his statement was consistent with what the CS reported hearing. BENNETT gave two (2) different statements and allegations, neither of which are substantiated by physical evidence of injury. Internal Affairs also notes that BENNETT is physically larger that AGIN and that AGIN'S claim that his physical and mental functioning is diminished after taking his medication, has been verified through medical staff in the HCU. Inmate BENNETT, ALLEN A81422, has been identified with his inmate photo ID.

Page 2 of 3

# AFFIDAVIT OF SERVICE

I, _Alko Bennett_____, state that I served a copy of the document to which this affidavit is attached upon each party, or, if represented by counsel, upon the attorney of record for said party (ies) by enclosing the same in a sealed envelope plainly addressed as is disclosed by the pleadings of record herein and by depositing each of such envelopes in the box designated for United States mail at _____Correctional Center, _____ Illinois, together with the appropriate request to the prison official responsible to affix fully prepaid thereon, on this _____day of _____, 20 _07_

_____
Signature

# VERIFICATION

I, _Alko Bennett_____, the undersigned, certify and state that:

1. I am the (Petitioner/Respondent) in the above captioned legal matter.

2. I have read the foregoing application and have knowledge of its contents; and

3. **Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth in the foregoing motion and this affidavit are true and correct except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.**

_____
(Your signature)